114 F.3d 1191
 10 NDLR P 33
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Fred BLUE, Plaintiff-Appellant,
v.
R.R. DONNELLY & SONS COMPANY, Defendant-Appellee.
 No. 96-3895.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 30, 1997.*
Decided May 13, 1997.
 ORDER
 
 1
 While working on the job as a pressman for R.R. Donnelley & Sons on January 4, 1993, Fred Blue injured his back. The injury was serious enough to require him to take a leave of absence from work. With the exception of a single five-hour stint of work on August 31, 1993, Blue remained off the job until September 1, 1995, when Donnelley terminated him, citing a clause in its collective bargaining agreement that called for the termination of employees who had not worked in two years. Blue responded by suing Donnelley both for violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and for retaliatory discharge under Illinois law. The district court granted summary judgment for Donnelley on both counts, but Blue appeals only the rejection of Count II, his state law discharge claim.
 
 
 2
 During the two and a half year period while he was on leave, Blue saw a number of doctors about his back problems. On May 3, 1993, one of them, Dr. Brackett, told him that he could return to work without any restrictions. Blue's job had been a strenuous one, requiring him to "[l]ift an 82-pound spindle to a height of 3 feet a maximum of 96 times per 8-hour shift." Initially, Blue obtained a second opinion from a Dr. Tracy, who recommended that he be restricted from work until (eventually) September 7, 1993. Notwithstanding Dr. Tracy's opinion, on August 31, 1993, Blue tried to return to his prior job. The effort was unsuccessful: after five hours of lifting 25 pounds of paper at a time, he found he had to leave due to the pain he was experiencing. Another doctor, Dr. Bailey, agreed that Blue could work only with certain physical restrictions that would have ruled out the pressman's position. Still other doctors, including Dr. Trafimow and Dr. Dupre, were skeptical that Blue was suffering from any permanent physical problems at all.
 
 
 3
 When he first went on leave, Blue filed a claim for benefits under the Illinois Workers' Compensation Act. He received temporary total disability benefits until May 3, 1993, the date of Dr. Brackett's examination. After those benefits were terminated, Blue filed additional claims for workers' compensation benefits in 1993 and 1994. Although his claims for additional payments from Donnelley were not successful, Blue received disability benefits under his private insurance policy during that time period. In June and August of 1993, the workers' compensation carrier arranged for private surveillance of Blue, which was terminated when nothing incriminating turned up.
 
 
 4
 In April 1994, Blue tried to arrange a return to work with his supervisors at Donnelley. He spoke with Donnelley personnel about his desire to return to work, and he also mentioned that his doctors had recommended certain restrictions on his physical activity. Donnelley did not invite him to return to work; to the contrary, around the same time Blue and Donnelley were in the midst of settlement discussions over his workers' compensation claims, and Donnelley had suggested that Blue resign as part of the settlement package.
 
 
 5
 Blue's status continued to be unresolved at the beginning of 1995. At that time, Ken Palmby, the human resources supervisor at the Donnelley facility where Blue had worked, received a memorandum from Gerry Green, the local benefits coordinator, which stated "I would like to prepare a separation letter and send it to Fred Blue." At the time Green sent the note, two years had elapsed since Blue's injury, and since his last date of work (except for the brief August 31, 1993, appearance). Article 10, Section 2 of the collective bargaining agreement with the Graphic Communication Union Local No. 476-C, which covered Blue's job at Donnelley, provided that "[a]n employee who is off work for any period equal to their length of service or two (2) years, whichever is less, shall be terminated." Palmby took no action at the time, choosing instead to wait until September 1, 1995, to terminate Blue's employment, since it was unquestioned that he had not worked since August 31, 1993. Following his receipt of a right-to-sue letter from the Equal Employment Opportunity Commission, to whom he had complained earlier, Blue filed this suit on September 27, 1995.
 
 
 6
 Before discussing the district court's decision on the retaliatory discharge claim, we must consider the court's jurisdiction to entertain the claim at all. As a state law claim arising out of the same basic facts as those providing the basis of Blue's federal claim, this count fell within the district court's supplemental jurisdiction, see 28 U.S.C. § 1367(a). When a district court dismisses the claims over which it had original jurisdiction, as it did here, it has discretion either to retain jurisdiction over the supplemental claims or to dismiss them. 28 U.S.C. § 1367(c). This court has frequently noted that the better course is to dismiss the supplemental state claims without prejudice when the federal claims are dismissed prior to trial, see Carr v. Cigna, 95 F.3d 544, 546 (7th Cir.1996); Kahn v. State Oil Co., 93 F.3d 1358, 1366 (7th Cir.1996), cert. granted in part on other grounds, 117 S.Ct. 941 (1997) (No. 96-871); Pena v. Mattox, 84 F.3d 894, 902 (7th Cir.1996). While the facts underlying the ADA claim are quite similar to those that are relevant to the retaliatory discharge claim, the two are not identical. In order to establish a retaliatory discharge claim under Illinois law, as the district court correctly held, Blue would have had to show that (1) he was employed by Donnelley prior to his work-related injury, (2) he exercised a right granted by the Illinois Workers' Compensation Act, and (3) his discharge was causally related to his filing of the workers' compensation claim. If Donnelley presented undisputed evidence that a valid, non-pretextual reason for discharging him, then the element of causation would be defeated.
 
 
 7
 If this were all we had to consider about this case, it would be possible for us to conclude that the district court did not abuse its discretion in reaching the merits of Blue's state law claim, notwithstanding the general rule favoring dismissal. However, the district court also noted in a footnote to its opinion that Blue's allegation that Donnelley improperly stopped paying total temporary disability compensation claims to him "may support liability on other grounds." But, the court went on, "[p]laintiff's failure to plead any other claims prevents me from addressing this issue."
 
 
 8
 We are therefore faced with both the district court's unexplained decision not to dismiss the supplemental claim after the federal claim dropped out of the case and its suggestion that Blue might have a meritorious state law claim to bring after all. Under these circumstances, we think it was error for the court to retain jurisdiction over the supplemental claim. Normal principles of claim preclusion would in all likelihood prevent Blue from raising those other state claims in the state courts at this point. If, on the other hand, the state claims were dismissed without prejudice, Blue would have an opportunity to refile his claim in state court and seek that court's permission to add any other issues that might be appropriate. We do not understand the district court's order to hold that Blue's retaliatory discharge claim was legally frivolous. Blue himself argues that disputed facts existed on the question whether, when he sought to return to work in 1994, he continued to be subject to lifting restrictions or other medical constraints that would have barred him from jobs in Donnelley's plant. We make no comment on this point, aside from agreeing with the district court that it is not so insubstantial that we should affirm the dismissal on that ground alone.
 
 
 9
 We therefore REVERSE the judgment of the district court dismissing the retaliatory discharge claim in Count II of Blue's complaint and REMAND so that the district court may amend its order to reflect a dismissal of Count II without prejudice.
 
 
 
 *
 Request for waiver of oral argument filed by counsel for the plaintiff-appellant was granted by the court on April 28, 1997. Case was submitted on the briefs and record